# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| HELENE MYLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-676-D |
| | ) | |
| STATE OF OKLAHOMA, ex rel. | ) | |
| OKLAHOMA DEPARTMENT | ) | |
| OF HUMAN SERVICES; DEBRA | ) | |
| CLOUR, in her individual capacity | ) | |
| as Area III Director, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Helene Myles, an African American woman, brings the present suit against the Oklahoma Department of Human Services (DHS) and Debra Clour, the Area III Director for DHS, for adverse employment actions taken against her while she was employed by DHS. Before the Court are Motions for Summary Judgment by DHS [Doc. No. 87] and Clour [Doc. No. 88], to which Myles has filed her response in opposition [Doc. No. 102]. The matter is fully briefed and at issue.

## BACKGROUND [1]

Myles has worked for DHS since 1980, where she started as a Clerical Trainee and became a Typist Clerk I. She was promoted to the position of Receptionist A120, Customer Service Representative II, and Administrative Technician IV ("Admin Tech") in the Field Operations Division, where she supervised lower level Admin Techs in her unit. Myles worked in Oklahoma County Office 55C.

Defendant Debra Clour began working for DHS in 1977, and in 1992, was made DHS's Director of Field Operations for Area III. Clour had the responsibility of supervising nine county offices in Oklahoma and Canadian counties. In 2011, a new employee complained to Cassandra Fowler (the County Director for the 55C office) about Myles' supervision. Fowler learned that other employees had also been complaining about Myles, and Clour asked Fowler to investigate the complaints. On May 23, 2011, pursuant to DHS regulations, Fowler temporarily reassigned Myles to

---

[1]The statement of undisputed facts in DHS and Clour's respective motions are virtually identical. Myles' response fails to dispute several purported undisputed facts based on "lack of information." Rule 56 places an affirmative duty on the nonmovant responding to a motion for summary judgment to cite to "particular parts of materials in the record" to establish that a particular fact cannot be supported or is genuinely disputed. Fed. R. Civ. P. 56(c)(1). To the extent such information is or was unavailable to Myles, she had the option of seeking relief under Rule 56(d), which permits the court to, *inter alia*, defer consideration of the motion or allow additional time to take discovery. *Id*. Miles did not pursue that option and the Court, accordingly, treats such facts as undisputed.

another county office. Six days into her reassignment, Myles took leave under the Family and Medical Leave Act of 1993 (FMLA) for approximately three weeks. When she returned, Myles was placed on twenty-day suspension with pay. After the twenty days had passed, Myles was directed to finish the remaining fifty-four days of her reassignment.

At the time of her reassignment, Myles filed a grievance (No. 11-53) with the DHS Grievance Manager. In her grievance, Myles complained that the County Office to which she was reassigned was too far from her home, she had not been given a chance to defend herself, she was not given time to file a grievance before leaving her office, and having an escort follow her out the office door "violated [her] rights as a human being." On June 15, 2011, Myles filed an appeal with the Oklahoma Merits Protection Commission (OMPC or Commission), alleging she was discriminated against when she was reassigned. Both Myles' grievance and appeal to the OMPC were denied (the appeal was dismissed as untimely). Myles appealed the denial of her grievance to the OMPC; the appeal was also dismissed. In the Order of Dismissal, the Executive Director of OMPC found that DHS followed agency policy and properly addressed Myles' grievance.

On August 19, 2011, Myles filed a charge with the EEOC, wherein she complained that her reassignment and twenty-day suspension were motivated by race

and gender. The EEOC issued a Dismissal and Notice of Suit Rights, which stated it was unable to conclude that the information it received established a statutory violation. During this time, Myles was again reassigned to another position because she had again taken extended leave and only worked for six days between May 23, 2011 to August 19, 2011. This reassignment was extended to December 6, 2011.

On or about September 30, 2011, Myles filed another grievance, No. 12-28, with the DHS Grievance Manager. Myles alleged her reassignment, as well as being escorted by security to be informed of such, constituted ongoing harassment and she was being penalized for taking sick leave. A state-certified civil rights investigator from the DHS Human Resources Management Division determined that Myles' grievance did not state a prima facie case of discrimination or harassment. On October 10, 2011, the assistant grievance manager assigned Myles' grievance to a "Step-Two" decision-maker named Kelley Knapp. Ms. Knapp, however, was out of the office, so Defendant Clour volunteered to prepare a "Step-Two" decision of Myles' grievance.

On November 21, 2011, Clour's "Step-Two" decision denied Myles' grievance. In the decision, Clour informed Myles that her reassignment and suspension were not disciplinary actions, but permitted steps taken pursuant to DHS regulations. Myles was notified of the decision the same day. The final Step-Two decision was issued

two days beyond the time provided by rule, although DHS policy did not state the consequences for such late action. On January 3, 2012, Clour, based on the investigation of the complaints of Myles' employees and pursuant to the Merit Rules and DHS policy, issued a Notice of Proposed Formal Disciplinary Action Involuntary Demotion. The notice stated Myles was being demoted for violating the FMLA and a pattern of mistreating her employees. On January 18, 2012, Myles was demoted from Admin. Tech IV to Admin. Tech III.

On January 26, 2012, Myles appealed her demotion to the OMPC, but later voluntarily dismissed the appeal. In April 2012, Myles filed a charge with the EEOC, which challenged her demotion and alleged she was being retaliated against for filing a prior EEOC charge. On May 8, 2012, the EEOC, after determining it was unable to conclude that a statutory violation had occurred, issued a Dismissal and Notice of Suit Rights. Myles did not file suit within the allotted 90 days.

Prior to the EEOC's decision, on May 4, 2012, Myles applied and was interviewed for an Administrative Assistant II position. Myles met the minimum qualifications for the job and was one of ten candidates interviewed. Clour was the selecting official. The interview committee consisted of an African-American male, an Asian male, and an African-American female. Based on each applicants' interviews and completion of a written exercise, the interview committee ranked

Myles ninth out of the ten candidates interviewed. The interview committee did not recommend Myles to Clour for selection. Instead, a Hispanic female was recommended and selected by Clour, who determined the candidate was the best qualified applicant.[2] The decision was finalized on May 11, 2012.

On June 1, 2012, Myles filed a discrimination complaint with the DHS Office of Civil Rights, and on June 4, 2012, filed another grievance, No. 12-71. The complaint and grievance both contested Myles' non-selection for the Administrative Assistant II position. On July 24, 2012, the assigned civil rights investigator found that, by a preponderance of the evidence, there was no sufficient basis to conclude Myles was discriminated against during the hiring or selection process. The same day, the "Step-Two" decision maker considering Myles' grievance denied her claim.

Myles filed an EEOC charge alleging discrimination and retaliation for her non-selection for the Administrative Assistant II position. As before, the EEOC determined it was unable to conclude the information before it established a statutory violation, and it issued a dismissal and notice of right to sue on January 22, 2013. Myles did not file suit within 90 days of receipt of the notice.

In November 2012, the Child Welfare Services Division of DHS posted

---

[2]The Hispanic applicant ranked first out of the pool of ten candidates for the position.

openings for nine newly-created Administrative Assistant II positions. All nine positions were to be selected from one group of applicants. Interviews were conducted by a six-person committee, consisting of three Whites and three African-Americans. The selecting official was Calvin Kelley, who became the "Child Welfare Deputy Director of Region 3 Administrator" after Clour's retirement and a department reorganization. Myles applied for all nine vacancies, but was not selected for any of them. Of the nine individuals who were ultimately selected, four were White, three were African-American, and two were Hispanic. On April 5, 2013, Myles filed a new EEOC charge, alleging she was discriminated and retaliated against when she was not hired for either of the Administrative Assistant II positions for which she applied. The charge also challenged Myles' non-selection for the Administrative Assistant II position she applied for in May 2012.[3]

Myles does not know whether Clour was allegedly retaliating against her for one of the EEOC charges she filed, or all four. Myles does not know if Clour or another DHS employee was aware that she had made a complaint to the EEOC. Moreover, Myles cannot recall whether anyone had said anything that indicated they

---

[3] The record is devoid of any evidence as to when the EEOC issued its Notice of Right to Sue regarding Myles' April charge. Nonetheless, DHS concedes that Myles' claim stemming from this denial is timely. *See* Mot. for Summary Judgment at 19 [Doc. No. 87].

were discriminating or retaliating against her.

DHS's motion contends (1) several of Myles' claims are barred by the applicable statute of limitations, (2) to the extent Myles asserts a claim for other positions for which she was not hired, Myles has failed to exhaust administrative remedies, (3) DHS has articulated legitimate, nondiscriminatory reasons for not selecting Myles for promotion to any of the nine Administrative Assistant II positions, and (4) DHS is entitled to summary judgment on Myles Title VII claims stemming from her demotion and non-selection. Clour contends summary judgment is appropriate as to Myles' claim against her for unlawful retaliation under 42 U.S.C. § 1981.[4]

## STANDARD OF DECISION

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Bonidy v. U.S. Postal Service*, 790 F.3d 1121, 1124 (10th Cir. 2015) (citing *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013)). The Court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter asserted, but to

---

[4] The Court previously granted in part Clour's Motion to Dismiss [Doc. No. 32], which dismissed Myles' race discrimination claims under §§ 1981 and 1983, but denied the motion as to Myles' § 1981 retaliation claim [Doc. No. 39].

determine whether there is a genuine issue for trial. *Birch v. Polaris Industries, Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015). An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id.*

Once the moving party has met its burden of demonstrating the absence of a dispute of material fact warranting summary judgment, the burden shifts to the nonmoving party to present sufficient evidence in specific, factual form to establish a genuine factual dispute. *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest upon the mere allegations or denials of its pleadings. Rather, it must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact. *Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004). Unsupported conclusory allegations do not create an issue of fact. *Finstuen v. Crutcher*, 496 F.3d 1139, 1144 (10th Cir. 2007).

## DISCUSSION

### I. DHS'S MOTION FOR SUMMARY JUDGMENT

The first issue for the Court is whether Myles' Title VII discrimination and

retaliation claims relating to her reassignment, suspension, demotion, and non-selection are barred by the applicable statute of limitations. Title VII states that "a civil action may be brought against the respondent named in the charge" within 90 days after the issuance of a right to sue notice. 42 U.S.C. § 2000e-5(f)(1). The 90-day period for filing suit generally commences on the date that the complainant actually receives the EEOC right to sue notice. *Biester v. Midwest Health Services, Inc.*, 77 F.3d 1264, 1267 (10th Cir. 1996); *see also Hall v. United Parcel Serv., Inc.*, 101 F. App'x 764, 765 (10th Cir. 2004) (unpublished). "These timing requirements are prerequisites to a civil suit." *Id.* (quoting *Croy v. Cobe Labs., Inc.*, 345 F.3d 1199, 1202 (10th Cir. 2003)). The Tenth Circuit presumes that a plaintiff received the notice within three to five days of the mailing date. *Lozano v. Ashcroft*, 258 F.3d 1160, 1165 (10th Cir. 2005).

The Court finds that Myles' Title VII claims stemming from her temporary reassignment, twenty-day suspension, involuntary demotion, and first application for the Administrative Assistant II opening are time-barred. Although the first right to sue is undated, it was received by DHS on January 19, 2012. Applying a generous presumption, Myles received notice on or about January 24, 2012. Myles' other right to sue notices were received May 8, 2012 and January 22, 2013, respectively, in which she complained of her temporary reassignment, twenty-day suspension,

involuntary demotion, and non-selection for the first application for the Administrative Assistant II opening. Myles' lawsuit was filed July 2, 2013, which was more than 90 days after receipt of her Right to Sue letter for the aforementioned claims. Notably, Myles makes no effort in her response to contest DHS's argument that the aforementioned claims are barred by the statute of limitations; the Court finds summary judgment is appropriate on this ground.

The remaining issue for consideration presented in DHS's motion is whether Myles has presented sufficient evidence from which a trier of fact could determine her non-selection for promotion to one of the nine Administrative Assistant II positions in January 2013 was based on discrimination and/or retaliation. Under the three-step burden-shifting procedure of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for a Title VII failure to promote claim Myles must establish that (1) she was a member of a protected class; (2) she applied for and was qualified for the position; (3) despite being qualified she was rejected; and (4) after she was rejected, the position was filled. *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003). If Myles can establish a prima facie case, the burden shifts to DHS to articulate a legitimate, nondiscriminatory reason for its employment action. *Jones*, 349 F.3d at 1266; *see also Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). If DHS makes this showing, Myles must then show that the justification is pretextual.

*Kendrick v. Penske Trans. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000).

There is no dispute that Myles has established a prima facie case. In the same vein, however, the Court finds DHS has articulated legitimate, non-discriminatory reasons for its decision. A multiracial interview committee scored Myles substantially lower than the other selected candidates. In the committee's judgment, Myles ranked below her co-applicants in the interview process, particularly in the areas of knowledge, skills and abilities. Myles' previous demotion also was a factor. Faced with these factors, Myles has done little to show such decisions were pretextual. Although Myles asserts complaints about the interview process and questions the motives of DHS officials, she has come forth with no evidence, other than her own subjective belief she was qualified, which indicates the decision was based on anything other than her qualifications. Such evidence is insufficient to withstand summary judgment. *See Stover v. Martinez*, 382 F.3d 1064, 1073 (10th Cir. 2004); *compare Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988) (concluding that plaintiff's claim she was as or more qualified than retained employee was insufficient to avoid summary judgment to employer on plaintiff's discrimination claim; "[i]t is the perception of the decision maker which is relevant, not plaintiff's perception of herself").

It is for these same reasons the Court finds summary judgment should be

granted on Myles' claims of retaliation. To state a prima facie case of retaliation, Myles must demonstrate: (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action. *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1233-34 (10th Cir. 2015). As above, if DHS provides a legitimate, non-discriminatory justification for the action, the burden shifts back to Myles to provide evidence showing that the proffered reason is a pretext intended to conceal an impermissible retaliatory motive. *Id*. Even assuming Myles has established her prima facie case of retaliation, her claim ultimately fails on the element of pretext. Myles has marshaled no significant evidence to show that DHS's justification for disciplining and demoting her was pretextual. An investigation was conducted into Myles' supervisory conduct, by which it was determined she should be reassigned. Myles was subsequently penalized for, in DHS's view, abusing her leave privileges and mistreatment of employees. Although Myles again criticizes the disciplinary process, there is no evidence such investigation and subsequent decisions were propelled by retaliatory motives.

## II. CLOUR'S MOTION FOR SUMMARY JUDGMENT

The aforementioned discussion applies equally to Myles' claims against Clour for § 1981 retaliation. Again, even assuming Myles has presented a prima facie case,

she has not effectively rebutted the legitimate, non-retaliatory reasons for her demotion. Accordingly, summary judgment shall be granted to Clour on Myles' claim against her.

## CONCLUSION

Defendants' Motions for Summary Judgment [Doc. Nos. 87, 88] are **GRANTED** as set forth herein. A judgment shall be issued accordingly.

**IT IS SO ORDERED** this 28th day of June, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE